# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJINDER JHANJAR,<br><br>           Petitioner,<br><br>      vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>           Respondent. | 1:06-cv-00637-AWI-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS<br><br>ORDER DENYING AS MOOT PETITIONER'S MOTION TO EXPEDITE (Doc. 27)<br><br>OBJECTIONS TO BE FILED WITHIN FIFTEEN DAYS |

       Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

       Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of an October 3, 1989 conviction based on a guilty plea in the Superior Court of California, County of Kern (the "Superior Court") for kidnaping for ransom (Cal. Pen. Code § 209(a)), with a true finding as to Petitioner's possession of a deadly weapon within the meaning of California Penal Code §§ 969b and 12022. (Doc. 25, Exh. 1). Petitioner was sentenced to a term of life with the possibility of parole, plus a one-year enhancement pursuant to § 12022. (Id.).

1    On May 6, 2003, Petitioner was found eligible for parole by the Board of Prison Terms
2 (now known as the Board of Parole Hearings ("parole board")). (Doc. 25, Exh. 4).
3 Subsequently, the parole board set Petitioner's parole release date as June 28, 1998, and, on
4 October 21, 2003, Petitioner was released on parole. (Doc. 25, Exhs. 6-9). Petitioner's county of
5 parole was changed from Kern County to Merced County pursuant to California Penal Code
6 § 3003(f), which prohibits returning a parolee to within 35 miles of the actual residence of a
7 victim of a violent felony. (Doc. 25, Exh. 10).
8    After exhausting his administrative remedies, Petitioner filed a petition for writ of habeas
9 corpus in the California Court of Appeal, Fifth Appellate District ("5th DCA"), contending that
10 he was entitled to a reduction in his parole term based on credits earned for time served beyond
11 the base term set by the parole board and challenging the board's decision to have him serve his
12 parole period in Merced County. (Doc. 25, Exh. 12). The 5th DCA denied that petition without
13 prejudice to permit Petitioner to raise those claims in superior court. (Id.).
14    After filing a petition in the Superior Court, the Superior Court denied the claims on
15 September 12, 2005. (Doc. 25, Exh. 14). A subsequent petition in the 5th DCA was also denied.
16 (Id., Exh. 16). The habeas petition filed by Petitioner in the California Supreme Court raising the
17 same issues was denied on March 29, 2006. (Id., Exh. 17). Petitioner filed the instant petition
18 on April 25, 2006. (Doc. 1). Respondent filed his answer on June 12, 2007. (Doc. 25).
19 Petitioner filed a traverse on June 18, 2007. (Doc. 26). On January 4, 2008, Petitioner filed a
20 motion to expedite the Court's decision in this case. (Doc. 27). Respondent concedes that the
21 petition is timely and that Petitioner's claims are fully exhausted. (Doc. 25, p. 4).

## FACTUAL BACKGROUND

23    Since Petitioner is not challenging the underlying conviction or sentence, documents from
24 any appeal by Petitioner of his conviction were not made part of the record in this action.
25 Moreover, since Petitioner is not challenging a denial of his release on parole, the underlying
26 facts of the crime, normally a basis for parole denial, are not directly relevant to these
27 proceedings. However, a short synopsis of the crime, gleaned from the probation officer's report,
28 will provide some factual context to the legal discussion that follows.

Some time during the night of April 7, 1989, several masked men with guns entered the Saini household in Bakersfield, California, and kidnaped eight-year-old Jaspreet Saini. (Doc. 25, Exh. 2, p. 5). The following day, the Sainis were contacted by telephone by the kidnapers who demanded a ransom payment of $30,000. (Id. at p. 6). When the ransom was paid, police surveillance focused on a vehicle whose occupant retrieved the ransom payment. (Id.). Petitioner, the driver of the vehicle and family friend of the Sainis, was arrested and evidence found in the vehicle linking him to the kidnaping, including $17,420 in cash in a paper bag. (Id. at p. 7). Police later recovered an additional $11,800 from the purse of Petitioner's sister and from Petitioner's back yard where some money had been buried. (Id. at p. 12). Jaspreet was released unharmed after the ransom was paid. (Id. at p. 10).

Police also arrested two co-conspirators, one of whom later indicated that Petitioner was the leader of the conspiracy and had recruited the other two men to participate in the kidnaping of the Saini child. (Id. at pp. 13-16).

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S. Ct. 1495 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), 117 S. Ct. 2059 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The original

petition was filed on April 25, 2006, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II. Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S. Ct. 1166 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 , 125 S. Ct. 1432 (2005), citing Williams v. Taylor, 529 U.S. at 405.

In contrast to the "contrary to" prong, "unreasonable application" of established law applies to mixed questions of law and fact, i.e., the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise scenario at issue. Williams v. Taylor, 529 U.S. at 407-408. A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. Put yet another way, the prong is met if state court "identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

///

It is this prong of the AEDPA standard of review, rather than the "contrary to" prong, which directs deference to be paid to state court decisions. See Medellin v. Dretke, 544 U.S. 660, 680, 125 S.Ct. 2088 (2005)(where state court's reasoning is "contrary to" U.S. Supreme Court precedent, it is not entitled to deference). While the deference is not blindly automatic, "the most important point is that an unreasonable application of federal law is different from an incorrect application of law...[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410-411; Wiggins v. Smith, 539 U.S. 510, 511, 123 S. Ct. 2527 (2003)(citing Williams, 529 U.S. at 409); Lockyer v. Andrade, 538 U.S. at 75 (Ninth Circuit erred by "conflating error (even clear error) with unreasonableness"). Moreover, § 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second part of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637 (citing Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029)(2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038, 125 S. Ct. 809 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be

5

correct, and the presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III. Review of Petitioner's Claims**

The petition alleges the following grounds for relief:

**Ground One:** Whether Petitioner's constitutional right to due process was violated by the state court's adjudication that he was not entitled to a reduction in his parole period based on time served and credits earned.

Petitioner contends that he was deprived of his due process rights by the state court's adjudication upholding the parole board's establishment of a five-year parole period that implicitly rejected Petitioner's claim that he was entitled to a parole reduction based on time already served and credits already earned. (Doc. 1, p. 5). This contention is without merit.[1]

The uncontroverted factual predicate for Petitioner's argument is that in 2003, after finding Petitioner suitable for parole, the parole board set the base term of Petitioner's confinement at 156 months, less 53 months of credits, for a total of 103 months. (Doc. 1, Exh. C, pp. 7-8; Doc. 25, Exh. 3, pp. 79-80). Based on that figure, Petitioner's release date, as of 2003,

---

[1] Respondent does not address the merits of Petitioner's claim in his Answer. Rather, Respondent asserts that the issue framed by Petitioner involves exclusively a question of state law and thus fails to state a federal claim upon which habeas relief may be granted. (Doc. 25). For the reasons set forth in the body of these Findings and Recommendations, the Court chooses to analyze Petitioner's claim under the AEDPA, assuming, for the sake of argument and without deciding, that Ground One sufficiently states a cognizable federal claim.

was June 28, 1998. (Doc. 1, Exh. E; Doc. 25, Exh. 7). In accordance with that calculation, Petitioner was released on parole on October 21, 2003 and remains on parole, his term scheduled to end on or about October 21, 2008. Petitioner's primary contention is that, if he is properly credited with the additional time he served from 1998 until 2003, his period of parole would be correspondingly reduced, resulting in his immediate release from parole supervision. Effectively, Petitioner contends that his credit for time served is sufficient to have completely discharged his five year parole period, or, put yet another way, that Petitioner served his entire parole period in prison. (Doc. 25, Exh. 11, p. 2).

Petitioner's entire argument hinges upon the parole board's own regulation, which provides that, "[i]f any custody credit remains after deducting it from the offense to which it applies, the remaining credit shall be deducted from the parole period." 15 C.C.R. § 2345. While Petitioner concedes that this regulation "applies specifically to term reduction *by pre-sentence credits*," he nevertheless maintains that "there is no rational distinction between pre-sentence term credits and term credits that an inmate earns and is awarded during confinement...." (Doc. 1, p. 6)(Emphasis supplied).

At the outset, it bears emphasis that, under the applicable AEDPA standard of review, the Court's focus in this case must be upon whether the state court adjudication was contrary to or an unreasonable application of clearly established Supreme Court precedent, not, as Petitioner would have it, whether the state court actually erred in construing California statutes to deny Petitioner the reduced parole term he seeks.

In order to effectuate this AEDPA standard, the Court must first determine whether there is clearly established federal law on this issue and, if so, what is the correct governing legal rule. See Williams v. Taylor, 529 U.S. at 407. In the petition, Petitioner couches his claim in the most general of constitutional terms, i.e., that the parole board's decision denying him credit that would reduce his parole period "abrogated his right to due process and his liberty interest protected by the Due Process Clause." (Doc. 1, p. 3). Likewise, in the traverse, Petitioner notes that "due process rights emanate from a State's laws and regulations as well as from the Due Process Clause itself," and that the "Fourteenth Amendment thus protects state prisoners from deprivation

of benefits provided in a State's parole regulations and guarantees that those in custody may not be deprived of liberty, including accurately determined parole terms and term credits applied, except in compliance therewith." (Doc. 26, p. 4). In making such assertions, Petitioner cites several United States Supreme Court decisions holding that prisoners have a general liberty interest under the Fourteenth Amendment in their parole release. (Id.).

Assuming, without deciding, that such general constitutional principles referenced by Petitioner apply equally to the termination of parole supervision as they do to a prisoner's initial release on parole, the fact still remains that such general principles of due process do not *expressly* address the specific issue framed by Petitioner, i.e., whether a prisoner's federal liberty interest is violated when California's statutes are interpreted to deny an inmate serving an indeterminate term a reduction in his term of parole based on credits previously earned in prison or time previously served. In other words, the "governing legal rule" or "controlling legal principle" that the state court was obliged to apply here is not a narrow rule of the United States Supreme Court specifically tailored to this particular set of circumstances, but is, instead, the much broader and generalized principle of a parolee's or potential parolee's liberty interest in release from custody under the Due Process Clause. Thus, unless the state court adjudication constitutes an unreasonable application of these general principles of due process, Petitioner's claim must be rejected under the AEDPA standards of review.

In conducting that analysis, the Court must, as mentioned, afford deference to the state court in its determination. Employing those principles here, the Court concludes that the state court's determination was not an unreasonable application of clearly established federal law.

In assessing the reasonableness of the state court's application of general due process principles, the Court notes that it does not appear that either the parole board or the state courts improperly construed or applied California law in Petitioner's case. Petitioner has drawn the Court's attention to an unpublished case from the California Court of Appeal, Sixth Appellate District ("6th DCA"), in In re Smith, 2007 WL 1267483 (Cal. App.6th Dist., decided May 2, 2007. (Doc. 17). Subsequently, the 6th DCA modified that decision in In re Smith, 2007 WL 2484107 (Cal. App.6th Dist.), decided September 5, 2007. (Doc. 27, attach.). In both cases, the

8

6th DCA held that California law did in fact require that the parole period for an inmate serving an indeterminate sentence should be reduced when it is determined that he had served time in excess of the "base term" established by the parole board. In re Smith, 2007 WL 2484107 at *3. In Smith, the defendant's term of imprisonment was ultimately set at twenty years; yet, with credits and time served, he had already served 23.5 years and had been on parole for two years and one month. Id. Accordingly, the 6th DCA concluded that such credits, when credited against his sentence and period of parole, "more than equal Smith's five-year parole period." Id.

As mentioned, Smith is an unpublished case and therefore is not precedent for the proposition relied upon by Petitioner in this case. However, the California Court of Appeal, First Appellate District ("1st DCA"), recently published In re Bush, ___Cal.Rptr.3d___, 2008 WL 771837 (March 25, 2008), in which the 1st DCA reached the *opposite* conclusion from the 6th DCA. In Bush, the 1st DCA rejected Petitioner's argument in its entirety, holding that none of the California statutes relating to parole or credits requires a reduction in the parole term of an inmate sentenced to an indeterminate term who has served or is entitled to a combination of service and credits that exceed his base term as set by the parole board. Id. at *4-6.

The arcana and nuances of the differing views of California law by the 6th and 1st DCAs need not concern the Court in this case since the issue is not which court was correct in its construction of California statutes but whether the state court's adjudication *in this case* resulted in an unreasonable application of clearly established United States Supreme Court law. The only published California appellate decision on this issue, Bush, construes California law to reach the opposite result from that proffered by Petitioner. This Court is bound by California's interpretation and application of its own laws. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989)(federal courts bound by state court rulings on questions of state law). Accordingly, the Court must assume that Bush articulates California's view of how its own laws resolve this issue.

Additionally, it is worth noting that Petitioner has not taken issue with the undisputed facts in this case. Indeed, Petitioner notes in his traverse that, "It is undisputed that Petitioner's sentence was accurately imposed by the sentencing court, that the prison term portion of that sentence was accurately calculated by BPH, that Petitioner's pre-imprisonment credit toward his

prison term was accurately calculated by the sentencing court, that the dates of his commitment and release from prison are accurate, and that the parole term portion of Petitioner's sentence is prescribed to be five years." (Doc. 26, p. 5).

Thus, in the absence of any dispute regarding the relevant facts, the narrow legal issue remaining–indeed the only issue remaining under Petitioner's view–is whether California's laws require that, under those undisputed facts, a parolee's period of parole must be reduced commensurate with any time served in excess of his set term. As mentioned, the only published appellate decision in California now clearly answers that question in the negative. Moreover, Petitioner has only challenged California's legal construction and application of its laws to Petitioner's case. He has never raised a facial constitutional challenge to those laws. Since it seems clear, at least at the present time, that California's application of its laws in Petitioner's case was correct and consistent with the 1st DCA's published decision in Bush, Petitioner received all of the credits to which California law entitled him. In the absence of a facial challenge to the constitutionality of such laws by Petitioner, there is no further basis on which to grant habeas relief since there is no underlying deprivation of a liberty interest upon which to premise a due process violation.

Accordingly, the Court concludes that the state court's adjudication of this issue was not contrary to clearly established federal law nor was it an unreasonable application of that law. Thus, Petitioner's claim must be denied.

**Ground Two:** **Whether Petitioner's federal constitutional rights were violated by the state court's decision upholding the parole board's determination to have Petitioner serve his parole term in Merced County.**

Petitioner next contends that he was denied due process when the parole board erroneously required him to serve his parole period in Merced County, rather than permitting him to be paroled to Kern County. This contention also lacks merit.

The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States. See also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827 (1973). Furthermore, as mentioned previously, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

In Ground Two, Petitioner alleges a denial of due process when the parole board changed his place of parole from Kern County to Merced County. Although Petitioner contends that his due process rights were violated by the parole board's decision, Petitioner's bald assertion alone is insufficient to allege a cognizable violation of the Constitution. Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-1389 (1996). Broad, conclusory allegations of unconstitutionality, such as those pleaded in Ground Two, are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999)(citing Gray v. Netherland, 518 U.S. 152, 162-163, 116 S. Ct. 2074 (1996))("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion). A petitioner in federal court cannot merely characterize some state act as unconstitutional and expect the court to explore all possible grounds under each article and amendment of the Constitution. While courts should liberally interpret a prisoner's pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of creating a federal claim for the petitioner.

///

Moreover, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239, 110 S. Ct. 2822 (1990)(quoting Dugger v. Adams, 489 U.S. 401, 409, 109 S. Ct. 1211, 1216-1217 (1989)(Emphasis supplied)).  Ground Two does not "call into question the lawfulness of conviction or confinement." Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364 (1994).

Furthermore, Petitioner does not allege that the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, . . . or resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254.  Indeed, the Court is unaware of any "clearly established" United States Supreme Court decision holding that the Due Process Clause is implicated by the refusal by state parole authorities to parole an inmate to the county of his choice.

While it is entirely understandable that Petitioner would have preferred to be paroled to Kern County, where, as he indicates in his petition, his family and certain job prospects are located (Doc. 1, p. 7), Petitioner's preferences and subjective expectations alone do not establish a violation of the Fourteenth Amendment.

Additionally, far from establishing that the parole board's decision was contrary to federal constitutional principles, Petitioner does not even allege that the parole board's decision to parole him to Merced County was a violation of *California law*.  To the contrary, California law prohibits paroling an inmate to a place within thirty-five miles of the residence of a victim of a violent crime.  Cal. Pen. Code § 3003(f).[2]   Since, at the time of Petitioner's release on parole in 2003, it appears that the kidnaping victim and her family still resided in the Bakersfield/Delano area, Respondent was precluded by state statute from paroling Petitioner to within thirty-five

---

[2] Cal. Pen. Code § 3003(a) provides in pertinent part that, "[e]xcept as otherwise provided in this section, an inmate who is released on parole shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration."  Subdivision (f) provides that "[n]othwithstanding any other law, an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of, or a witness to, a violent felony as defined in paragraphs (1) to (7), inclusive, and paragraph (16) of subdivision (c) of Section 667.5...."  Paragraph (7) of subdivision (c) of § 667.5 refers to "any felony punishable by death or imprisonment in the state prison for life."  Petitioner was convicted of kidnaping, a violation of Pen. Code § 209(a). Section 209(a) sets the term of imprisonment for kidnaping at life; the life sentence is either with or without the possibility of parole, depending on certain specified circumstances. Accordingly, § 3003(f) applies to Petitioner.

12

miles of the greater Bakersfield area, which included Delano. Moreover, Petitioner expressly agreed to a special condition of parole that he not travel to or through Kern County. (Doc. 25, Exh. 15, p. 47; Doc. 1, p. 7, fn. 4). Under those circumstances, parole to another county where parole supervision could be effectuated without violating either state law or the special condition of Petitioner's parole was entirely reasonable.

In sum, Petitioner has failed to establish that the state court's adjudication of this issue was contrary to or an unreasonable application of clearly established federal law. Accordingly, it should be denied.

**ORDER**

It is HEREBY ORDERED that, in light of these Findings and Recommendations to deny the instant petition, Petitioner's motion to expedite (Doc. 27), is DENIED as MOOT.

**RECOMMENDATIONS**

For the foregoing reasons, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Judge. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 28, 2008**                              /s/ Theresa A. Goldner
                                                         UNITED STATES MAGISTRATE JUDGE